MILLS SADAT DOWLAT LLP
Camron Dowlatshahi (SBN 308618)
Kathleen Moore (SBN 358479)
515 South Flower Street, Suite 1000
Los Angeles, CA 90071
Tel.: (213) 628-3856
Email: camron@msdlawyers.com
Email: kathleen@msdlawyers.com

Attorneys for Plaintiff Richard Rodriguez
and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RICHARD RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

v.

BROSNAN RISK CONSULTANT, LTD, a New York corporation; WALMART, INC., a Delaware stock corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-01602-JLS

**FOURTH AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT FOR:**

**(1) Failure to Pay Minimum Wage for All Hours Worked (Lab. Code §§ 1182.12, 1194, 1194.2, 1197 and 1197.1)**
**(2) Failure to Pay Overtime Compensation (Lab. Code §§ 1194 and 1198)**
**(3) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512, and IWC Wage Orders)**
**(4) Failure to Provide Rest Periods (Lab. Code §§ 226.7, 512, and IWC Wage Orders)**
**(5) Failure to Indemnify Necessary Business Expenses (Lab. Code § 2802)**
**(6) Waiting Time Penalties (Lab. Code §§ 201-203)**
**(7) Failure to Provide Accurate Wage Statements (Lab. Code § 226)**
**(8) Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*)**

**JURY TRIAL DEMANDED**

## TABLE OF CONTENTS

INTRODUCTION AND PRELIMINARY STATEMENT .......... 1
THE PARTIES .......... 2
A. Plaintiff .......... 2
B. Defendants .......... 3
VENUE AND JURISDICTION .......... 6
ALLEGATIONS COMMON TO ALL CAUSES OF ACTION .......... 6
FIRST CAUSE OF ACTION .......... 18
SECOND CAUSE OF ACTION .......... 19
THIRD CAUSE OF ACTION .......... 21
FOURTH CAUSE OF ACTION .......... 23
FIFTH CAUSE OF ACTION .......... 24
SIXTH CAUSE OF ACTION .......... 25
SEVENTH CAUSE OF ACTION .......... 26
EIGHTH CAUSE OF ACTION .......... 27
PRAYER FOR RELIEF .......... 28

Plaintiff Richard Rodriguez, individually, and on behalf of other members of the general public similarly situated, brings this action against Defendant Brosnan Risk Consultant, LTD, Walmart, Inc. and Does 1 through 10, inclusive, and alleges as follows:

## INTRODUCTION AND PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant Brosnan Risk Consultant, LTD, Walmart, Inc. and Does 1 through 10 (collectively, "Defendants") for violations of the California Labor Code and unfair business practices stemming from Defendants' failure to pay minimum wages, failure to pay overtime compensation, failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain accurate records of hours worked and meal periods, failure to timely pay all wages to employees, failure to indemnify necessary business expenses (against Brosnan only) and failure to furnish accurate wage statements (against Brosnan only).

2. Plaintiff brings the First through Eighth Causes of Action individually and as a class action on behalf of self and certain current and former employees of Defendants (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully below). The Class consists of Plaintiff and all other persons who have been employed by any Defendants in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3. Defendants own and operate an industry, business, and establishment within the State of California. As such, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), and the California Business and Professions Code.

4. Despite these requirements, throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of:

a. Failing to pay employees for all hours worked, including all minimum wages, and overtime wages in compliance with the California Labor Code and IWC Wage Orders;

b. Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate

records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday in which a meal period violation occurred;

c. Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday in which a rest period violation occurred;

d. Willfully failing to pay employees all minimum wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates;

e. Failing to maintain accurate records of the hours that employees worked; and

f. Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

5. Plaintiff is informed and believes and on that basis alleges that Defendants were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

6. At all relevant times, Defendants were legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff and the Class. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior."

## THE PARTIES

### A. Plaintiff

7. Plaintiff Richard Rodriguez ("Plaintiff") is an individual residing in the County of Riverside, California, and worked as a non-exempt Security Officer assigned exclusively to Walmart retail locations in California from August 15, 2019, to July 12, 2024.

//

//

8. Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

**B. <u>Defendants</u>**

9. Plaintiff is informed and believes and on that basis alleges that Defendant Brosnan Risk Consultant, LTD ("Brosnan") is:

a. a New York corporation with its principal place of business in the County of Rockland, New York.

b. a business entity conducting business in numerous counties throughout the State of California; and

c. the current or former employer of Plaintiff and of the putative Class. Defendants suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions.

10. Plaintiff is informed and believes and on that basis alleges that Defendant Walmart, Inc. ("Walmart") is:

a. a Delaware corporation with its principal place of business in the County of Benton, Arkansas.

b. a business entity conducting business in numerous counties throughout the State of California, including in Contra Costa County; and

c. the current or former employer of Plaintiff and of the putative Class. Defendants suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions.

11. Plaintiff is unaware of the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes that each of the fictitiously named defendants is

responsible in some manner for the occurrences herein alleged and that Plaintiff's damages were proximately caused by said defendants' conduct.

12. At all times mentioned herein, the Defendants named as Does 1 through 10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured Plaintiff and a significant number of the Class in the State of California.

13. Plaintiff is informed and believes and on that basis alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions. Plaintiff is informed and believes and on that basis alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

14. At all relevant times, Brosnan hired Plaintiff as a non-exempt Security Officer. Brosnan assigned Plaintiff to provide on-site security services at Walmart retail locations. Brosnan maintained Plaintiff's personnel file and employment records. Brosnan processed and issued Plaintiff's payroll. Brosnan determined Plaintiff's base hourly rate of pay. Brosnan maintained timekeeping systems used to record Plaintiff's hours worked. Brosnan maintained policies governing meal periods, rest periods, overtime, expense reimbursement, and wage statement issuance. Brosnan had authority to hire, discipline, reassign, and terminate Plaintiff. Brosnan retained the contractual right to remove Plaintiff from assignments at Walmart locations. Brosnan

communicated with Walmart management regarding Plaintiff's performance, scheduling, and worksite issues. Brosnan exercised control over Plaintiff's wages and payroll practices and therefore was Plaintiff's employer within the meaning of the California Labor Code.

15. At all relevant times, Plaintiff was assigned by Brosnan to provide in-store security services at Walmart retail locations. Although Brosnan hired Plaintiff, processed payroll, maintained personnel records, and exercised formal payroll and employment-administration functions, Walmart exercised direct and substantial control over Plaintiff's day-to-day work at the Walmart locations where Plaintiff was assigned. While working at Walmart stores, Plaintiff reported on site to Walmart's asset protection management team and Walmart store management. Walmart managers and asset protection personnel directed Plaintiff where to report inside the store, where to stand, what area of the store to monitor, when to respond to Walmart calls, and what asset protection and loss prevention procedures Plaintiff was required to follow. Plaintiff was instructed that he was required to follow directions from Walmart managers and Walmart asset protection personnel while assigned to Walmart posts.

16. Walmart also exercised control over whether Plaintiff and other Brosnan security officers could remain assigned to Walmart locations. Plaintiff is informed and believes, and on that basis alleges, that Walmart managers and asset protection personnel communicated directly with Brosnan regarding Plaintiff's performance, compliance with Walmart instructions, scheduling, and worksite issues. Walmart had the practical authority to request that Brosnan remove a security officer from a Walmart post, and when Walmart did not want a security officer at the Walmart location, Brosnan would remove the officer from that Walmart assignment, discipline the officer, reassign the officer, or terminate the officer. Plaintiff was removed from a Walmart post at Walmart's direction. Walmart's ability to cause Plaintiff's removal from Walmart assignments constituted control over Plaintiff's working conditions, discipline, continued assignment, and continued employment opportunities.

17. Walmart also controlled Plaintiff's hours and working conditions through Walmart's worksite timekeeping and break practices. Walmart required Plaintiff to clock in and

out using Walmart's telephone-based system by calling Walmart's main line and entering "001" to clock in and "002" to clock out. Walmart also required Plaintiff to remain responsive to Walmart asset protection and store management personnel during shifts, including during meal and rest periods. Walmart asset protection personnel instructed Plaintiff, in substance, that when Walmart called him, he had to respond, even if he was taking a break. Plaintiff's meal and rest periods were therefore not duty-free because Walmart retained control over Plaintiff during breaks and required him to interrupt breaks to respond to Walmart's operational and asset protection needs. By exercising control over Plaintiff's daily duties, store location, post location, break interruptions, responsiveness during shifts, worksite timekeeping, removal from assignment, and compliance with Walmart asset protection procedures, Walmart controlled Plaintiff's working conditions and suffered or permitted Plaintiff to work. Accordingly, Walmart was Plaintiff's joint employer under California law.

## VENUE AND JURISDICTION

18. The wrongful conduct alleged against the Defendants occurred in California. At all relevant times, the conduct at issue was part of a continuous and ongoing pattern of behavior.

19. This Court is the proper forum to adjudicate this action because the wrongful acts that are the subject of this action occurred here and because the Defendant now resides in its jurisdictional area.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20. During the statutory period, Brosnan classified Plaintiff as non-exempt from California's overtime requirements and paid Plaintiff an hourly wage. Walmart exercised day-to-day worksite control over Plaintiff while Plaintiff performed security services at Walmart retail locations, including by directing Plaintiff's post, where he was required to stand, the areas of the store he was required to monitor, when he was required to respond to Walmart asset protection calls, and the Walmart asset protection procedures he was required to follow.

21. Throughout the statutory period, Brosnan failed to pay Plaintiff for all hours worked, including minimum wages and overtime wages, because Brosnan failed to accurately

record, reconcile, and pay all time Plaintiff worked while assigned to Walmart locations, including time Plaintiff worked at Walmart's direction during interrupted meal and rest periods. Walmart caused or contributed to the unpaid wage violations by requiring Plaintiff to remain responsive to Walmart asset protection and store management personnel during shifts, including during meal and rest periods, and by requiring Plaintiff to perform compensable work when Walmart asset protection personnel called Plaintiff back from breaks or directed him to respond to store incidents.

22. Brosnan maintained payroll practices and wage-payment practices that failed to compensate Plaintiff and the Class for all compensable time worked. Brosnan also failed to pay all required overtime wages, meal period premium wages, and rest period premium wages when Plaintiff and the Class performed work at Walmart's direction or were prevented from taking compliant breaks at Walmart locations. Walmart caused or contributed to these violations by exercising worksite control over Plaintiff's duties, requiring Plaintiff to remain available to Walmart asset protection personnel, requiring Plaintiff to respond when called, and interrupting Plaintiff's meal and rest periods for Walmart store and asset protection needs.

23. Brosnan was responsible for maintaining payroll records, issuing wage statements, maintaining employment records, processing payroll, and correcting payroll and timekeeping discrepancies. Walmart maintained and required use of a separate worksite clock-in/clock-out procedure by which Plaintiff clocked in and out through Walmart's telephone-based system by calling Walmart's main line and entering "001" to clock in and "002" to clock out. Brosnan separately required Plaintiff to record time using Brosnan's timekeeping application. Brosnan failed to consistently reconcile Walmart's worksite clock-in/clock-out records with Brosnan's timekeeping and payroll records, resulting in understated hours and unpaid wages.

24. Brosnan failed to maintain accurate records of all hours Plaintiff and the Class worked because Brosnan did not consistently capture, reconcile, or pay all time reflected in Walmart's worksite clock-in/clock-out system, all time recorded through Brosnan's own timekeeping system, and all time Plaintiff worked at Walmart's direction during interrupted meal and rest periods. Walmart caused or contributed to the inaccurate recording of hours by requiring

Plaintiff to use Walmart's separate worksite clock-in/clock-out procedure and by requiring Plaintiff to perform work during periods that were not treated as compensable work time, including interrupted meal and rest periods.

25. Throughout the statutory period, Walmart's worksite practices prevented Plaintiff from receiving legally compliant meal periods. Walmart asset protection personnel and store management required Plaintiff to remain on or near Walmart premises, remain responsive to Walmart calls, monitor store activity, return to assigned areas of the store, and respond to Walmart asset protection or store incidents during periods that should have been uninterrupted, duty-free meal periods. Walmart asset protection personnel instructed Plaintiff, in substance, that when Walmart called him, he had to respond, even if he was taking a break. Brosnan failed to ensure that Plaintiff was relieved of all duty during meal periods while assigned to Walmart posts and failed to pay meal period premiums when Walmart's instructions and worksite practices caused meal periods to be missed, late, shortened, interrupted, or non-duty-free.

26. Throughout the statutory period, Walmart's worksite practices prevented Plaintiff from receiving legally compliant rest periods. Walmart store activity, Walmart staffing needs, and Walmart asset protection demands prevented Plaintiff from leaving his post and taking uninterrupted, duty-free rest periods. Walmart asset protection personnel instructed Plaintiff, in substance, that when Walmart called him, he had to respond, even if he was taking a break. Brosnan failed to ensure that Plaintiff was relieved of all duty during rest periods while assigned to Walmart posts and failed to pay rest period premiums when Walmart's instructions and worksite practices caused rest periods to be missed, late, shortened, interrupted, or non-duty-free.

27. Brosnan willfully failed and refused to timely pay Plaintiff and the Class all wages due during employment and at the conclusion of employment, including unpaid minimum wages, unpaid overtime wages, meal period premium wages, and rest period premium wages. Walmart is liable as a joint employer because Walmart's worksite practices caused or contributed to the unpaid wages and premiums by requiring Plaintiff to remain subject to Walmart's control, respond

to Walmart asset protection calls, interrupt meal and rest periods, and perform work during periods that were not treated as compensable work time.

28. Brosnan failed to furnish Plaintiff and the Class with accurate, itemized wage statements because the wage statements did not accurately reflect all hours worked, all applicable rates of pay, all gross and net wages earned, all overtime wages owed, and all meal and rest period premium wages owed. These inaccuracies resulted from Brosnan's failure to accurately capture, reconcile, and pay all time worked through Walmart's worksite clock-in/clock-out system, Brosnan's own timekeeping system, and Walmart-directed work performed during interrupted meal and rest periods. As a result of these violations of California Labor Code section 226, subdivision (a), the Plaintiff and the Class suffered injury because, among other things:

a. the violations led them to believe that they were not entitled to be paid minimum wages, overtime wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled to such wages;

b. the violations led them to believe that they had been paid minimum wages, meal period premium wages, and rest period premium wages, even though they had not been;

c. the violations led them to believe they were not entitled to be paid minimum wages, meal period premium wages, and rest period premium wages at the correct California rate even though they were;

d. the violations led them to believe they had been paid minimum wages, overtime, meal period premium wages, and rest period premium wages at the correct California rate even though they had not been;

e. the violations hindered them from determining the amounts of minimum, meal period premium, and rest period premium owed to them;

f. in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages owed to them, computations they would not have to make if the wage statements contained the required accurate information; and

g. by understating the wages truly due them, the violations caused them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits;

h. the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff and the Class were entitled, and Plaintiff and the Class were paid less than the wages and wage rates to which they were entitled. As a result, Plaintiff and the Class are owed the amounts provided for in California Labor Code section 226, subdivision (e), including actual damages.

29. Beginning at least in or around October 2022 and continuing for approximately two years, Plaintiff was required to record his time using two separate timekeeping systems. Walmart required Plaintiff to clock in and out through Walmart's worksite system by calling Walmart's main line and entering "001" to clock in and "002" to clock out. Brosnan separately required Plaintiff to record time using Brosnan's timekeeping application on Plaintiff's personal cell phone. These systems did not consistently synchronize, reconcile, or aggregate Plaintiff's hours worked. As a result, hours reflected in Walmart's timekeeping system were not always accurately reflected in Brosnan's payroll system, Plaintiff's total daily and weekly hours were understated, and overtime hours worked were not fully compensated.

When timekeeping issues occurred, Plaintiff and other security officers were required to contact Brosnan management to request corrections. Plaintiff is informed and believes, and on that basis alleges, that Brosnan wrote up employees when timekeeping equipment or systems did not work or when time entries were not properly recorded, even though Plaintiff and other employees were required to use the timekeeping systems imposed by Brosnan and Walmart. Plaintiff repeatedly discovered discrepancies between the hours he worked and the hours reflected in payroll. Although some corrections were made, discrepancies were not consistently corrected. On multiple occasions, hours worked were not fully restored, resulting in unpaid straight-time and overtime wages.

//

//

//

30. Throughout his employment, Brosnan paid Plaintiff an hourly rate between $16.00 and $19.00. Plaintiff regularly worked more than 40 hours per workweek. When Plaintiff covered shifts for other security officers, he worked approximately 12 hours per day.

31. For example, during the workweek of November 15, 2022, Plaintiff worked approximately 48 hours while assigned to a Walmart post. During that workweek, Plaintiff was required to record his time through both Walmart's worksite clock-in/clock-out system and Brosnan's timekeeping application, as described above. Because the two systems did not reconcile Plaintiff's hours, Brosnan's payroll did not capture all hours Plaintiff worked that week. As a result, Defendants did not pay Plaintiff overtime compensation for approximately 8 hours he worked in excess of 40 hours during that workweek.

32. Throughout his employment, Plaintiff's meal periods were controlled and interrupted by Walmart. Plaintiff was required to remain on or near Walmart premises during meal periods because Walmart expected Plaintiff to remain available to respond to Walmart asset protection and store needs. Walmart asset protection personnel instructed Plaintiff that when Walmart called him, he had to respond, even if he was on break. As a result, Plaintiff was required to monitor store activity, remain responsive to Walmart calls, and interrupt meal periods when Walmart asset protection personnel or store conditions required his assistance. Walmart's practice prevented Plaintiff from being relieved of all duty during many meal periods. Brosnan knew or should have known of these conditions because Brosnan assigned Plaintiff to Walmart posts, communicated with Walmart management regarding Plaintiff's worksite performance and assignment, and required Plaintiff to comply with the conditions of the Walmart assignment, but Brosnan failed to ensure compliant meal periods or pay required meal period premiums.

33. Plaintiff regularly worked shifts exceeding five hours. During many such shifts, Walmart prevented Plaintiff from taking timely, uninterrupted, duty-free meal periods because Walmart required Plaintiff to remain available to respond to Walmart asset protection calls and store incidents. Plaintiff was required to respond to Walmart calls, monitor store activity, return to assigned areas of the store, and assist with Walmart asset protection issues during periods that

should have been duty-free meal periods. Plaintiff was also not provided a compliant second meal period on shifts exceeding ten hours. Brosnan failed to pay meal period premiums when Walmart's instructions and worksite practices caused Plaintiff's meal periods to be missed, late, shortened, interrupted, or non-duty-free. For example, in or around March 2023, Plaintiff was interrupted during a meal break at Walmart's direction and was not paid premium pay. As a further example, during the workweek of May 13, 2024, Plaintiff was assigned to a Walmart post and was paid $18.00 per hour. During that workweek, on approximately half of his workdays, Walmart asset protection personnel called Plaintiff during his meal periods and Plaintiff was required to respond, so his meal periods were interrupted and not duty-free. Brosnan did not pay Plaintiff one additional hour of pay at his regular rate of $18.00 for any of those workdays.

34. Plaintiff frequently worked shifts exceeding four hours without receiving a full ten-minute uninterrupted rest period that was free from duty and, insofar as practicable, taken in the middle of each work period. Walmart store activity, Walmart staffing needs, and Walmart asset protection demands prevented Plaintiff from leaving his post and taking uninterrupted rest periods. Walmart asset protection personnel required Plaintiff to respond when called, including during rest periods, and Walmart could request that Brosnan remove security officers who were unresponsive to Walmart calls or failed to follow Walmart instructions. As a result, Plaintiff and other security officers could not take uninterrupted, duty-free rest periods. Brosnan failed to prevent Walmart's interruption of rest periods and failed to pay rest period premiums. For example, in or around March 2023, Plaintiff was unable to take rest periods due to Walmart-directed workload and Walmart post requirements and was not paid premium pay for the missed or interrupted rest periods. As a further example, during the workweek of May 13, 2024, Plaintiff was assigned to a Walmart post and was paid $18.00 per hour. During that workweek, on approximately half of his workdays, Walmart asset protection personnel called Plaintiff during his rest periods and Plaintiff was required to respond, so his rest periods were interrupted and not duty-free. Brosnan did not pay Plaintiff one additional hour of pay at his regular rate of $18.00 for any of those workdays.

//

//

35. Brosnan required Plaintiff to use his personal cell phone for Brosnan's timekeeping application, including beginning in or around October 2022. Plaintiff used his personal cell phone for work-related timekeeping and communications required by Brosnan. Brosnan did not reimburse Plaintiff for the necessary business expenses associated with the required use of his personal cell phone.

36. Walmart's direction and control over Plaintiff's breaks caused Plaintiff to perform compensable work during periods that were not treated as compensable work time. When Walmart asset protection personnel called Plaintiff during meal or rest periods, Plaintiff was required to stop his break and respond to Walmart's needs, including by returning to his assigned post, monitoring store activity, assisting Walmart asset protection personnel, or responding to incidents inside the store.

37. Brosnan knew or should have known that Plaintiff and other security officers assigned to Walmart locations were required to follow Walmart's on-site instructions, remain responsive to Walmart asset protection personnel, and interrupt breaks when Walmart called. Brosnan also knew or should have known that Walmart had the practical ability to cause Plaintiff and other security officers to be removed from Walmart assignments because Walmart communicated complaints and removal requests to Brosnan, and Brosnan acted on those requests.

38. Brosnan and Walmart jointly suffered or permitted Plaintiff to work. Brosnan assigned Plaintiff to Walmart, paid Plaintiff, maintained payroll records, maintained personnel records, and exercised formal discipline and termination authority. Walmart accepted the benefit of Plaintiff's security work, directed and controlled Plaintiff's day-to-day duties, controlled where Plaintiff stood and what areas Plaintiff monitored, required Plaintiff to follow Walmart asset protection procedures, required Plaintiff to remain responsive during breaks, maintained a worksite clock-in/clock-out procedure, and had the practical authority to cause Plaintiff's removal from Walmart assignments.

//

//

//

39. Plaintiff's unpaid wage, overtime, meal period, rest period, waiting time, and UCL claims arise from the combined operation of Brosnan's payroll and employment-administration practices and Walmart's worksite control. Plaintiff's expense reimbursement and wage statement claims arise from Brosnan's practices and are asserted against Brosnan only. Walmart caused or contributed to the underlying wage-and-hour violations by controlling Plaintiff's day-to-day work, requiring Plaintiff to respond during breaks, requiring Plaintiff to comply with Walmart timekeeping procedures, and exercising practical control over Plaintiff's continued assignment to Walmart posts. Brosnan caused or contributed to the violations by failing to accurately record and pay all time worked, failing to reconcile Walmart and Brosnan timekeeping records, failing to pay meal and rest period premiums, failing to reimburse required cell phone expenses, and failing to issue accurate wage statements or timely final wages.

40. Upon information and belief, Plaintiff thereon alleges that his experience was reflective of the proposed class.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seek class certification under California Code of Civil Procedure section 382.

42. All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law. The proposed Class consists of and is defined as:

> All persons employed by Brosnan as non-exempt security officers in California and assigned to provide security services at Walmart retail locations during the applicable limitations period.

43. Plaintiff is a member of the Class.

44. Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

45. There is a well-defined community of interest in the litigation and the Class is readily ascertainable:

//

a. Numerosity: The members of the Class (and each subclass, if any) are so that joinder of all members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

b. Typicality: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

c. Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no conflicts with or interests antagonistic to any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

d. Superiority: A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;
2. The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;
3. The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
4. The difficulties likely to be encountered in the management of a class action.

//

**e.** Public Policy Considerations: The public policy of the State of California is to resolve the California Labor Code claims of many employees through a class action. Indeed, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are also fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected.

46. There are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members, including without limitation, whether, as alleged herein, Defendants have:

a. failed to pay Class Members for all hours worked, including minimum wages, and overtime wages;

b. failed to provide meal periods and pay meal period premium wages to Class Members;

c. failed to authorize and permit rest periods and pay rest period premium wages to Class Members;

d. failed to promptly pay all wages due to Class Members upon their discharge or resignation;

e. failed to maintain accurate records of all hours Class Members worked, and all meal periods Class Members took or missed;

f. failed to reimburse Class Members for all necessary business expenses (Brosnan only); and

g. violated California Business & Professions Code §§ 17200 et. seq. as a result of their illegal conduct as described above.

47. This Court should permit this action to be maintained as a class action pursuant to California Code of Civil Procedure section 382 because:

//

//

a. The questions of law and fact common to the Class predominate over any question affecting only individual members;

b. A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

c. The members of the Class are so numerous that it is impractical to bring all members of the class before the Court;

d. Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

e. There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

f. Without class certification, the prosecution of separate actions by individual members of the class would create a risk of:

1. inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

2. adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and

48. Plaintiff contemplates the eventual issuance of notice to the proposed members of the Class that would set forth the subject and nature of the instant action. Defendants' own business records may be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the

use of additional techniques and forms commonly used in class actions, such as published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

## FIRST CAUSE OF ACTION

**Failure to Pay Minimum Wage for All Hours Worked**

**(Lab. Code §§ 1182.12, 1194, 1194.2, 1197 and 1197.1)**

(Against All Defendants)

49. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

50. "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

51. At all relevant times herein mentioned, Defendants knowingly failed to pay to Plaintiff and the Class compensation for all hours they worked. By their failure to pay compensation for each hour worked as alleged above, Defendants willfully violated the provisions of Section 1194 of the California Labor Code, and any additional applicable Wage Orders, which require such compensation to non-exempt employees.

52. Walmart is liable for unpaid minimum wages because Walmart exercised control over Plaintiff's compensable work time by requiring Plaintiff to remain responsive to Walmart asset protection personnel, interrupt meal and rest periods when called, perform work during periods that should have been duty-free breaks, and record time through Walmart's worksite clock-in/clock-out system. Brosnan is liable because it failed to ensure that all time Plaintiff worked at Walmart's direction was accurately recorded and paid.

53. Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all non-overtime hours worked for Defendants.

54. By and through the conduct described above, Plaintiff and the Class have been deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

55. By virtue of the Defendants' unlawful failure to pay additional compensation to Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class suffered damages in amounts which are presently unknown to Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which will be ascertained according to proof at trial.

56. By failing to keep adequate time records required by California Labor Code section 1174, subdivision (d), Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and the Class.

57. Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

58. California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month. Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum wages. However, during all such times, Defendants systematically failed and refused to pay Plaintiff and the Class all such wages due and failed to pay those wages twice a month.

59. Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code sections 218.5, 218.6, and 1194, subdivision (a).

## SECOND CAUSE OF ACTION

**Failure to Provide Overtime Compensation (Lab. Code §§ 510, 1194, 1198)**

(Against All Defendants)

60. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

//

//

//

61. California Labor Code section 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

62. California Labor Code sections 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code section 1198 states that the employment of an employee for longer hours than those fixed by the IWC is unlawful.

63. At all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants.

64. At all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code sections 510 and 1198. Plaintiff and the Class are regularly required to work overtime hours.

65. Walmart is liable for unpaid overtime because Walmart's worksite practices caused Plaintiff to perform compensable work during interrupted meal and rest periods and required Plaintiff to remain subject to Walmart's control while posted at Walmart stores. Brosnan is liable because it failed to reconcile Walmart's timekeeping records with Brosnan's payroll records and failed to pay all overtime wages due for Plaintiff's total daily and weekly hours worked.

66. By virtue of Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the Class have suffered damages in amounts which are presently unknown to them but which exceed the jurisdictional minimum of this Court and which will be ascertained according to proof at trial.

67. By failing to keep adequate time records required by California Labor Code section 1174, subdivision (d), Defendants have made it difficult to calculate the full extent of overtime compensation due to Plaintiff and the Class.

//

//

68. Plaintiff and the Class also request recovery of overtime compensation according to proof, interest, attorneys' fees and costs pursuant to California Labor Code section 1194, subdivision (a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

69. California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month. IWC Wage Orders also provide that every employer shall pay to each employee, on the established payday for the period involved, overtime wages for all overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and the Class with all compensation due, in violation of California Labor Code section 204.

**THIRD CAUSE OF ACTION**

**Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512, and IWC Wage Orders)**

(Against All Defendants)

70. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

71. At all relevant times, Defendants were aware of and were under a duty to comply with California Labor Code sections 226.7 and 512 and applicable sections of IWC Wage Orders.

72. California Labor Code section 512 prohibits an employer from employing an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, or for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

73. Section 11 of Wage Order No. 4 provides, and at all times relevant hereto provided, in relevant part that:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is

> relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

74. Labor Code section 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each work day that the employer does not provide a compliant meal or rest period.

75. Defendants knowingly failed to provide Plaintiff and the Class with meal periods as required by law. Defendants also failed to provide Plaintiff and the Class with any payment of meal premiums. Plaintiff and the Class are entitled to be paid one hour of premium wages rate for each workday he or she was not provided with all required meal break(s), plus interest thereon.

76. Walmart is liable for meal period violations because Walmart asset protection personnel required Plaintiff to remain available during meal periods, respond when called, and interrupt meal periods to address Walmart store and asset protection needs. Brosnan is liable because it assigned Plaintiff to Walmart posts under these conditions, failed to ensure Plaintiff was relieved of all duty during meal periods, and failed to pay meal period premiums when meal periods were missed, late, shortened, interrupted, or non-duty-free.

//

77. Plaintiff and the Class have therefore been damaged and are entitled to payment of the meal period premiums as provided by law.

**FOURTH CAUSE OF ACTION**

**Failure to Provide Rest Periods (Lab. Code §§ 226.7, 512, and IWC Wage Orders)**

(Against All Defendants)

78. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

79. Section 12 of Wage Order No. 4 provides, and at all times relevant hereto provided, in relevant part that:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages. If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

80. California Labor Code section 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of

compensation for each work day that the employer does not provide a compliant meal or rest period.

81. Defendants knowingly failed to provide Plaintiff and the Class with rest periods as required by law, and knowingly failed to authorize and permit Plaintiff to take rest periods as required by law. Defendants also failed to provide Plaintiff and the Class with any payment of rest premiums. Plaintiff and the Class are entitled to be paid one hour of premium wages rate for each workday he or she was not provided with all required rest break(s), plus interest thereon.

82. Walmart is liable for rest period violations because Walmart asset protection personnel required Plaintiff to remain available during rest periods, respond when called, and interrupt rest periods to address Walmart store and asset protection needs. Brosnan is liable because it assigned Plaintiff to Walmart posts under these conditions, failed to ensure Plaintiff was relieved of all duty during rest periods, and failed to pay rest period premiums when rest periods were missed, late, shortened, interrupted, or non-duty-free.

83. Plaintiff and the Class have therefore been damaged and are entitled to payment of the meal and rest period premiums as provided by law.

## FIFTH CAUSE OF ACTION

**Failure to Indemnify Necessary Business Expenses (Lab. Code § 2802)**

(Against Brosnan)

84. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

85. Brosnan violated California Labor Code section 2802 and the IWC Wage Orders, by failing to pay and indemnify the Plaintiff and the Class for their necessary expenditures and losses incurred in direct consequence of the discharge of their duties or of their obedience to directions of Brosnan.

86. Brosnan required Plaintiff to use his personal cell phone for Brosnan's timekeeping application and other work-related communications. Plaintiff incurred necessary business expenses through the required use of his personal cell phone for Brosnan's timekeeping application and

other Brosnan-required work-related communications. Brosnan failed to reimburse Plaintiff for these necessary business expenses.

87. As a result, Plaintiff and the Class were damaged at least in the amounts of the expenses they paid, or which were deducted by Brosnan from their wages.

88. Plaintiff and the Class they represent are entitled to attorney's fees, expenses, and costs of suit pursuant to California Labor Code section 2802, subdivision (c) and interest pursuant to California Labor Code section 2802, subdivision (b).

**SIXTH CAUSE OF ACTION**

**Waiting Time Penalties (Lab. Code §§ 201-203)**

(Against All Defendants)

89. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

90. California Labor Code sections 201 and 202 require an employer to pay its employees all wages due immediately upon discharge or within 72 hours of resignation. This requirement applies to unpaid overtime wages. California Labor Code section 203 provides that if an employer willfully fails to pay such wages, the employer must continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

91. Defendants willfully failed to pay Plaintiff and the Class their earned and unpaid wages for 30 days from the time such wages should have been paid under the Labor Code.

92. The unpaid wages owed at separation included wages and premiums resulting from Walmart's interruption of meal and rest periods and Brosnan's failure to accurately record and pay all wages and premiums due. Brosnan failed to pay Plaintiff all final wages owed, and Walmart is liable as a joint employer because Walmart's worksite practices caused or contributed to the unpaid wages and premium wages owed at termination.

//

//

//

93. As a result of Defendants' willful failure to pay owed wages upon separation from employment, Plaintiff and the Class have been harmed and Defendants are liable for statutory waiting time penalties pursuant to California Labor Code section 203.

**SEVENTH CAUSE OF ACTION**

**Failure to Provide Accurate Wage Statements (Lab. Code § 226)**

(Against Brosnan)

94. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

95. California Labor Code section 226, subdivision (a) requires employers to provide employees, semi-monthly or at the time of each payment of wages, with a statement that accurately reflects certain itemized information including total number of hours worked.

96. Brosnan knowingly and intentionally failed to furnish Plaintiff and the Class with timely and accurate wage statements that accurately reflected the total number of hours worked and wages earned, as required by California Labor Code section 226.

97. Brosnan knew or should have known the wage statements were inaccurate because Plaintiff repeatedly reported discrepancies between the hours he worked and the hours reflected in payroll, including discrepancies caused by the failure to reconcile Walmart's worksite clock-in/clock-out records with Brosnan's payroll records. Despite those reports, Brosnan did not consistently correct all discrepancies, and the wage statements continued to omit all hours worked, all wages earned, and all meal/rest period premiums owed.

98. As a result of Brosnan's failure to provide accurate itemized wage statements, Plaintiff and the Class suffered actual damages and harm by being unable to determine the amount of overtime worked each pay period in a timely manner, which prevented them from asserting their rights under California law.

99. Calculation of the true wage entitlement for Plaintiff and the Class is difficult and time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as a result of having to bring this action to attempt to obtain correct wage information following

Brosnan's refusal to comply with many of the mandates of the California Labor Code and related laws and regulations.

100. Plaintiff and the Class are entitled to recover from Brosnan their actual damages caused by Brosnan's failure to comply with California Labor Code section 226, subdivision (a).

**<u>EIGHTH CAUSE OF ACTION</u>**

**Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*)**

(Against All Defendants)

101. Plaintiff incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

102. Business and Professions Code section 17200, *et seq.* ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Defendants have engaged in unlawful activity as follows:

a. violations of California Labor Code sections 510, 1194, 1198 for failure to pay minimum wages, including overtime wages;

b. violations of California Labor Code sections 226.7 and 512 for failure to provide meal periods and rest breaks; and

c. violation of California Labor Code section 2802 for failure to indemnify necessary business expenses (Brosnan only).

103. Walmart's unlawful, unfair, and fraudulent business practices included requiring Plaintiff and other Walmart-assigned security officers to remain responsive during meal and rest periods, interrupting breaks for Walmart asset protection needs, requiring compliance with Walmart's worksite clock-in/clock-out procedure, and exercising practical control over Plaintiff's continued assignment to Walmart posts. Brosnan's unlawful, unfair, and fraudulent business practices included failing to reconcile timekeeping records, failing to pay all wages and premiums owed, failing to reimburse necessary business expenses, failing to provide accurate wage statements, and failing to pay all final wages owed.

//

//

104. By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

105. Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

106. Plaintiff, individually, and on behalf of members of the putative Class, is entitled to, and does, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

107. Plaintiff seeks restitution and other non-prospective relief available under the UCL, including restitution of wages and other amounts wrongfully withheld from Plaintiff and the Class as a result of Defendants' unfair, unlawful, and/or fraudulent business practices.

108. Pursuant to the UCL, Plaintiff and the putative Class are entitled to restitution of wages and other amounts withheld and retained by Defendants during the applicable limitations period, prejudgment interest, attorneys' fees where authorized, costs, and such other non-prospective relief as the Court deems proper.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated only with respect to the class claims, prays for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1. That this action be certified as a class action under California Code of Civil Procedure section 382;
2. That Plaintiff be appointed as the representatives of the Class; and
3. That counsel for Plaintiff be appointed as Class Counsel.

//

As to the First Cause of Action

4. For general unpaid wages as may be appropriate;

5. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

6. For liquidated damages;

7. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194, subdivision (a); and,

8. For such other and further relief as the Court may deem equitable and appropriate.

As to the Second Cause of Action

9. For general unpaid wages at overtime wage rates as may be appropriate;

10. For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

11. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194, subdivision (a); and,

12. For such other and further relief as the Court may deem equitable and appropriate.

As to the Third Cause of Action

13. For unpaid meal period premium wages as may be appropriate;

14. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

15. For reasonable attorneys' fees under California Code of Civil Procedure section 1021.5, and for costs of suit incurred herein; and

16. For such other and further relief as the Court may deem equitable and appropriate.

As to the Fourth Cause of Action

17. For unpaid rest period premium wages as may be appropriate;

18. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

//

//

19. For reasonable attorneys' fees under California Code of Civil Procedure section 1021.5, and for costs of suit incurred herein; and

20. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fifth Cause of Action</u>

21. For general unpaid wages and reimbursement of business expenses as may be appropriate;

22. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

23. For reasonable attorneys' fees and for costs of suit incurred herein; and

24. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Sixth Cause of Action</u>

25. For statutory wage penalties pursuant to California Labor Code section 203 for former employees who have left Defendants' employ;

26. For pre-judgment interest on any unpaid wages from the date such amounts were due;

27. For reasonable attorneys' fees and for costs of suit incurred herein; and

28. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Seventh Cause of Action</u>

29. For penalties and actual damages against Brosnan pursuant to California Labor Code section 226, subdivision (e);

30. For reasonable attorneys' fees and for costs of suit incurred herein; and

31. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Eighth Cause of Action</u>

32. That the Court award restitution and other non-prospective relief available under the UCL based on Defendants' failure to pay wages for all hours worked, failure to provide compliant meal periods, failure to authorize and permit compliant rest

periods, failure to reimburse necessary business expenses, and related unlawful business practices;

33. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

34. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of Defendants' violations of the UCL;

35. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

36. For such other and further relief as the Court may deem equitable and appropriate.

As to All Causes of Action

37. For any additional relief that the Court deems just and proper.

Dated: October 27, 2026

MILLS SADAT DOWLAT LLP

By: [signature]
Camron Dowlatshahi

Attorneys for Plaintiff Richard Rodriguez and the Putative Class